THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| **TRUSTEES OF THE UTAH CARPENTERS' AND CEMENT MASONS' PENSION TRUST and UTAH CARPENTERS' AND CEMENT MASON'S PENSION TRUST,** )<br><br>Plaintiff, )<br><br>vs. )<br><br>**ELIZABETH LOVERIDGE, TRUSTEE FOR PERRY OLSEN DRYWALL, INC.** )<br><br>Defendant. ) | Case No. 2:10-cv-00809-DS<br><br><br><br>MEMORANDUM DECISION |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

The parties in the above-captioned matter previously filed cross-motions for summary judgment on claims brought under the Employee Retirement Income Security Act of 1974. The Court granted Plaintiffs' motion, in part, but reserved judgment on the issue of whether the Arbitrator erred in refusing to credit the $0.52 per hour payments toward Defendant's withdrawal liability. (Doc. 90). The Court requested, and has since received from the parties, memoranda explaining the legal basis for granting or denying such a credit. Defendant, Elizabeth Loveridge, Trustee for Perry Olsen Drywall, Inc. ("POD"), is the only defendant who has not settled with Plaintiffs, Trustees of the Utah Carpenters' and Cement Masons' Pension Trust and Utah

Carpenters' and Cement Masons' Pension Trust (together, the "Plan"), and is still before the court. For the reasons set forth below, the Court grants Plaintiffs' motion for summary judgment on this last remaining issue—that is, as a matter of law, the Arbitrator did not err in refusing to credit the $0.52 per hour payments toward Defendant's withdrawal liability.

Background

On July 3, 2006, the Plan determined that *Amendment 5*—adopted by the Employers and Trustees[1] on July 1, 2003—was essentially an attempt by the Employers to "evade and avoid" withdrawal liability. Accordingly, the Plan filed a complaint against the Employers claiming that the Employers had completely withdrawn from the pension plan. The case was handled by Arbitrator Norman Brand. Brand agreed with the Plan and found that the Employers' agreement to pay a minimum contribution of $.52 per hour constituted a "transaction" with "a principal purpose to evade or avoid withdrawal liability" under 29 U.S.C. §1392(c). Brand determined that the Employers had completely withdrawn under the ERISA framework, and that their "contributions" after the adoption of *Amendment 5* should be re-characterized as "installment payment[s] of withdrawal liability." With their contributions now being characterized as "installment payments of withdrawal liability," the Employers sought to receive a refund of the payments or at least a credit toward their liability in the amount they had paid. Arbitrator Brand ruled that the Employers were not entitled to a refund of the $0.52 per hour [payments], nor were those payments creditable against the amount of withdrawal liability owed.

Concurring in the Arbitrator's findings, this Court held as a matter of law that even "a collective bargaining agreement [could] constitute 'any transaction' for withdrawal liability purposes within the plain meaning of 29 U.S.C. § 1392(c)." (Doc. 90) This Court likewise affirmed the Arbitrators finding that the Employers' incurred withdrawal liability by adopting *Amendment 5* with the "principal purpose" to "evade or avoid" that liability. (Doc. 90) However, with regard to the $0.52 per hour contribution credit, this Court reserved judgment and requested memoranda from the parties to clarify (1) whether there is a material difference between "installment payments of withdrawal liability" and "payments of withdrawal liability" under the relevant provisions of ERISA; (2) if not, whether a payment schedule is absolutely required

---

[1] The board of trustees comprised two Okland employees and one New Star employee.

under ERISA for a payment to count toward withdrawal liability; and (3) whether crediting payments of withdrawal liability even fell within the Arbitrator's jurisdiction at all. (Doc. 90)

Following this request, three of the four employers settled this issue with the Plan outside of Court. However one employer, POD, still contends this issue.

## Jurisdiction & Venue

This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1451(c) and 28 U.S.C. § 1331. Venue is proper as the suit is "brought in the district where the plan is administered or where a defendant resides or does business." Id. §1451(d).

## Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (a). In considering summary judgment motions, the Court must examine "the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." Berry & Murphy, P.C. v. Carolina Cas. Ins. Co., 586 F.3d 803, 808 (10th Cir. 2009). Furthermore, "an issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue. An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'" Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). As the Court has already entered judgment on all other issues presented by the parties for summary judgment, the Court now enters judgment on the last issue remaining on motion—the credit or refund for POD's $0.52 per hour payments.

## Discussion

### A. Installment Payments of Withdrawal Liability

Arbitrator Brand found that POD's payments—made in accordance with *Amendment 5*—were made with a principal purpose to evade or avoid withdrawal liability. Thus, the Arbitrator found that they were not "contributions," but rather "installment payment[s] of withdrawal liability." This finding fits squarely within the statutory framework since "payments of withdrawal liability" cannot also be considered "obligation[s] to contribute" within the

meaning of §1392(b).  Consequently, Arbitrator Brand also found that POD had completely withdrawn from the Plan as of the date it began to engage in these strategic transactions under *Amendment 5*. Now, since these payments have been reclassified as "installment payments of withdrawal liability," POD seeks to have these payments credited toward their withdrawal liability. To this end, POD contends that there *is no* material difference between "installment payments of withdrawal liability" and "payments of withdrawal liability" under the statute. POD's argument would lead to the conclusion that—regardless of whether or not the payments were made in accordance with a prescribed installment schedule—the payments should be credited toward POD's overall withdrawal liability. To the contrary, the Plan argues that there *is* a material difference between "payments of withdrawal liability" and "installment payments of withdrawal liability."  The Plan's argument leaves open the possibility that the payments may not be creditable toward POD's overall withdrawal liability.

Based on our previous findings, it appears that "installment payments of withdrawal liability"—unlike "payments of withdrawal liability"—can be made even before withdrawal liability has been decided or assessed. This difference seems immaterial on its face; however, the facts of this case demonstrate the spurious intentions that can bely "contributions," later recast as "installment payments of withdrawal liability," made before actual withdrawal liability has been assessed.  In other words, the court finds "contributions" can be deceptively tailored to avoid withdrawal liability altogether. And the fact that the payments are later recast as "installment payments of withdrawal liability" rather than "contributions" does not negate the fact that they did in fact comprise a "transaction . . . to evade or avoid liability."  The material difference, then, is that "installment payments of withdrawal liability" can be made with deceptive intent to "evade or avoid," and "payments of withdrawal liability" cannot. Accordingly, POD's "contributions" cannot be considered in the determination of withdrawal liability. To be sure, Section 1392(c) clearly states that "liability shall be determined and collected without regard to [evade and avoid] transaction[s]."

POD's argument, on the other hand, conveniently looks past the "evade or avoid" nature of the transaction, permitting the scheme to go unsanctioned on the premise that the Arbitrator reclassified the deceptive "contributions" as "installment payments of withdrawal liability." POD asserts that the Plan attempts to "have its cake and eat it too" by reclassifying the

contributions as "installment payments of withdrawal liability," and yet refusing to credit those payments toward POD's withdrawal liability. Ironically, it appears that POD has attempted to "have its cake and eat it too" by engaging in a transaction to "evade or avoid" liability, and then demanding that its investment in that deceitful transaction be credited toward the withdrawal liability it incurred because of that transaction. Equitable considerations will not allow this. Indeed, one that seeks equity must do equity. Furthermore, POD's position would not fit within the statutory framework even if equitable considerations slanted in its favor. To be sure, "liability shall be determined and collected without regard to such [evade or avoid] transactions." 29 U.S.C. §1392(c). Evidently, the statute itself incorporates equitable considerations, tailoring the punishment for an employer's deceit to the severity of the "evade or avoid" transaction the employer embraced.

There is, therefore, a material difference between "installment payments of withdrawal liability" and "payments of withdrawal liability" for purposes of the Employee Retirement Income Security Act of 1974. This legal conclusion is bolstered by equitable considerations which demand such a distinction as applied to this case.

### B. Payment Schedule Requirement

Because the court holds that there is a material difference between the phrases "payments of withdrawal liability" and "installment payments of withdrawal liability," the question of whether a payment schedule is absolutely required under ERISA is irrelevant to the disposition of the issue before the court. However, even if there were no material difference between the phrases, the statute does not clarify whether a payment schedule is absolutely required for payments of withdrawal liability made *before* liability has been assessed. The statute only contains credit/refund provisions with regard to overpayments or underpayments made in accordance with a payment schedule defined *after* liability has been assessed. In other words, the statute is silent with regard to these pre-assessment-type payments, neither requiring nor prohibiting that a credit be given.

### C. Arbitrator Jurisdiction

The Plan contends that even if the Arbitrator decided that a credit was warranted, he did not actually have jurisdiction over the issue. The Plan cites 29 U.S.C. § 1103 which indicates that

"in the case of a contribution, or a payment of withdrawal liability . . . if such . . . payment is made . . . by mistake of fact or law . . . [the general rule] shall not prohibit the return of such contributions or payment to the employer." However, the Plan points out that because this section of ERISA exists, but not in the range of withdrawal liability sections that may be arbitrated, it must be that the Arbitrator lacked jurisdiction to address the issue. Finally, the Plan references C.F.R. § 4219.31(d) which explains that an Arbitrator may only make adjustments for overpayments *under an actual withdrawal liability payment schedule*. While the Plan is correct that there was no actual withdrawal liability payment schedule, they seem to overlook the word "overpayments." Indeed, the language cited by the Plan is limited to a discussion of "overpayments." Here, we are not dealing with an overpayment of withdrawal liability, but rather a prepaid portion of the overall withdrawal liability that was only later incurred and assessed. Thus, C.F.R. § 4219.31(d) is irrelevant to the question of the Arbitrator's jurisdiction over this matter.

On the other hand, POD contends that 29 U.S.C. 1401 grants jurisdiction to an Arbitrator with respect to §§1382(1)[2], 1391, 1392(b)[3] and 1399(b)(2)[4]. True, but the question is whether

---

[2] 29 U.S.C. §1382.
    When an employer withdraws from a multi-employer plan, the plan sponsor, in accordance with this part, shall—
    (1)determine the amount of the employer's withdrawal liability,
    (2) notify the employer of the amount of the withdrawal liability, and
    (3)collect the amount of the withdrawal liability.

[3] 29 U.S.C. § 1392. *(quoted in part)*
    (b)Payments of withdrawal liability not considered contributions
      Payments of withdrawal liability under this part shall not be considered contributions for purposes of this part.

[4] 29 U.S.C. § 1399. Notice, collection, etc., of withdrawal liability *(quoted in part)*
    (b)Notification, demand for payment, and review upon complete or partial withdrawal by employer
      …
      (2)(A) No later than 90 days after the employer receives the notice described in paragraph (1), the employer—
        (i)may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
        (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
        (iii) may furnish any additional relevant information to the plan sponsor.
      (2)(B) After a reasonable review of any matter raised, the plan sponsor shall notify the employer of—
        (i)the plan sponsor's decision,
        (ii)the basis for the decision, and
        (iii)the reason for any change in the determination of the employer's liability or schedule or liability payments.

those sections bear on the issue before the Court.  Section 1382, read properly, regards the determination of an amount or proportion of the overall liability that one employer should be allocated with respect to others in a multi-employer plan—not the amount with respect to previous payments. This section fails to provide Arbitrator jurisdiction over this matter. Section 1392(b), read properly, regards the simple fact that contributions are not to be considered payments of withdrawal liability—not the determination of credits toward withdrawal liability. This section also fails to provide Arbitrator jurisdiction over this matter. Section 1399(b)(2), on the other hand, does provide a basis for Arbitrator jurisdiction. Specifically, Section (b)(2)(B)(iii) relates to "any change in the determination of the employer's liability." While this section specifically provides a directive for the plan sponsor, the Arbitrator has the jurisdiction to decide whether the "basis for [The Plan's] decision" is appropriate in light of the other ERISA provisions. The breadth of this language surely provides grounds for Arbitrator jurisdiction over this matter.

## Conclusion

The Court grants the Plan's motion for summary judgment on the remaining issue, finding that there is indeed a material difference between "installment payments of withdrawal liability" and statutory "payments of withdrawal liability." The "installment payments of withdrawal liability" in this case were made with "a principal purpose to evade or avoid" withdrawal liability. 29 U.S.C. § 1392. The statute, and equity, demands that withdrawal liability be determined without regard to such transactions. Thus, no credit or refund shall be granted to POD.

SO ORDERED.

DATED this 7th day of February, 2013.

BY THE COURT:

_David Sam_

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT